Attorney Grievance Comm'n v. Stephen Howard Sacks, Misc. Docket AG No. 42, September Term, 2016

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who engaged in numerous forms of serious misconduct that involved multiple clients and included misappropriating funds, fabricating documents, and making misrepresentations to courts, clients, and opposing counsel. Lawyer's conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.2(a) (Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(c), 1.15(d), 1.15(e) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.4(c), 3.4(d) (Fairness to Opposing Party and Counsel), 8.1(b) (Disciplinary Matters), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Baltimore City
Case No. 24-C-16-005698
Argued: March 6, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 42

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

STEPHEN HOWARD SACKS

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: April 20, 2018

This attorney discipline proceeding involves a lawyer who, chief among various forms of serious misconduct, misappropriated funds, fabricated documents, and made misrepresentations to courts, clients, and opposing counsel.

In this case, Stephen Howard Sacks, Respondent, a member of the Bar of Maryland, represented seven clients, and himself, in separate matters that resulted in the institution of an attorney disciplinary proceeding and numerous findings of misconduct. Specifically, Sacks was retained to represent Jermaine D. Harris in a criminal case, to assist Joy Whyte with a meeting with an Assistant United States Attorney, to assist Erick E. Chen in attempting to have the Federal Bureau of Investigation return certain personal property to him, to represent Daniel W. Anderson in criminal cases and an immigration case, to represent Rondall Range in a criminal case, to represent Anita Range in a child support case, and to represent William D. Smith in a domestic matter. In these matters, Sacks engaged in assorted forms of misconduct, including misappropriation of funds that he had been paid to represent Whyte, Chen, Anderson, Rondall Range, and Smith. While representing himself, Sacks initiated eight frivolous actions or appeals against multiple parties, including his landlord, Tindeco Wharf, LLC ("Tindeco"), and its counsel, Adam M. Spence. Harris, Whyte, Chen, Anderson, Craig Kadish (Mr. Range's new counsel), Smith, and Spence filed complaints against Sacks with Bar Counsel.

On October 3, 2016, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Sacks, charging him with violating Maryland Lawyers' Rules of Professional Conduct

("MLRPC")[1] 1.2(a) (Allocation of Authority), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(c), 1.15(d), 1.15(e) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal),[2] 3.4(a), 3.4(b), 3.4(c), 3.4(d) (Fairness to Opposing Party and Counsel), 4.1(a)(1) (Truthfulness in Statements to Others),[3] 8.1 (Disciplinary Matters),[4] 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).

On October 17, 2016, this Court designated the Honorable Karen C. Friedman ("the hearing judge") of the Circuit Court for Baltimore City ("the circuit court") to hear this attorney discipline proceeding. On January 27, 2017, the hearing judge issued a Scheduling Order in which she directed the parties to complete discovery no later than March 3, 2017, and scheduled the first day of the disciplinary hearing for April 4, 2017. On March 3, 2017, Sacks filed a Motion for Extension of Time to File Discovery Responses, which the hearing judge granted. On March 13, 2017, Sacks filed a Motion for Continuance, requesting that the hearing judge postpone the discovery deadline for four

---

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. We will refer to the MLRPC because Sacks's misconduct occurred before this change.

[2]Before the hearing judge, Bar Counsel withdrew the charges as to MLRPC 3.2 and 3.3(a)(1).

[3]In the Petition, Bar Counsel provided the text, but not the number or title, of MLRPC 4.1(a)(1). The hearing judge did not address whether Sacks violated MLRPC 4.1(a)(1). Neither do we.

[4]Before the hearing judge, Bar Counsel withdrew the charges as to MLRPC 8.1(a), leaving only the charges as to MLRPC 8.1(b).

months, and postpone the first day of the hearing for six months.

On March 27, 2017, the hearing judge conducted a scheduling conference, and issued a second Scheduling Order, directing Sacks to file an answer to the Petition no later than April 19, 2017, respond to Bar Counsel's interrogatories and requests for production of documents no later than May 16, 2017, and complete discovery no later than September 19, 2017. The Scheduling Order also rescheduled the first day of the disciplinary hearing for October 16, 2017, and stated that Sacks had agreed that he would not request, and the hearing judge would not grant, another postponement.

On April 21, 2017, Sacks filed an answer to the Petition, two days late. On May 8, 2017, the hearing judge scheduled a motions hearing for June 8, 2017. On May 16, 2017—the date of the deadline for Sacks to respond to Bar Counsel's discovery requests—Sacks mailed responses to Bar Counsel's First Set of Interrogatories and Request for Production of Documents. As of May 18, 2017, Bar Counsel had not received Sacks's responses. Bar Counsel filed a Motion for Sanctions based on Sacks's failure to timely provide responses.

On June 6, 2017, Sacks wrote to the hearing judge, requesting a postponement of the motions hearing that was scheduled for two days later. The hearing judge denied Sacks's request. On June 8, 2017, the hearing judge conducted a motions hearing, and denied the Motion for Sanctions on the ground that, although Bar Counsel received Sacks's responses "a few days" after the deadline, the discovery violation was not egregious enough to warrant sanctions. At the motions hearing, Bar Counsel asked Sacks when he would be available to be deposed in July 2017. Sacks responded that he was uncertain because he needed to check his calendar and his doctor's schedule, as he needed eye

surgery. The hearing judge scheduled a hearing for June 12, 2017 for the specific purpose of choosing a date for Sacks's deposition.[5]

On June 12, 2017, the hearing judge conducted a hearing at which the parties agreed to schedule Sacks's deposition for July 31, 2017. The hearing judge advised Sacks to arrange his schedule to ensure his presence at his deposition. Less than two weeks later, on July 24, 2017, Sacks e-mailed Bar Counsel, stating that his deposition would need to be postponed. Bar Counsel e-mailed Sacks, stating that there had not been an agreement to postpone his deposition, and that, unless the hearing judge issued a protective order, Sacks would be expected to appear for his deposition. On July 27, 2017—the Thursday before July 31, 2017, which was a Monday—Sacks e-mailed Bar Counsel, stating: "Please leave me alone while I take care of my health. Do not contact me tomorrow or over the weekend. There will be no one in my office Monday." Bar Counsel e-mailed Sacks, asking him to confirm whether he would appear for his deposition. On July 28, 2017, Sacks e-mailed Bar Counsel, stating: "You broke your promise, therefore, I am not bound by mine." Later on that date, Sacks's secretary e-mailed Bar Counsel, stating that Sacks would not appear for his deposition. Sacks did not seek, and the hearing judge did not issue, a protective order that would have excused his failure to appear for his deposition.

_____

[5]In her opinion, the hearing judge acknowledged that it was "unusual" to schedule a hearing for the purpose of choosing a date for Sacks's deposition. The hearing judge explained that, by the time of the June 8, 2017 motions hearing, she had observed Sacks's "pattern of requesting postponements." The hearing judge had expected that, at the June 12, 2017 hearing, the parties would choose a date for Sacks's deposition that would be convenient for both of them, such that no postponement would be necessary. The hearing judge pointed out that the time between the June 8, 2017 motions hearing and the June 12, 2017 hearing—*i.e.*, four days—was sufficient for Sacks to check his doctor's schedule.

On August 2, 2017, Bar Counsel filed a Motion for Sanctions based on Sacks's failure to appear for his deposition. Sacks's response to the Motion for Sanctions was initially due no later than August 21, 2017. On August 18, 2017, Sacks filed a Motion for Extension of Time for Filing Responses to Motions and Scheduling Order, requesting that the hearing judge extend the deadline for responding to the Motion for Sanctions to September 8, 2017. The hearing judge issued an Order, directing Sacks to file a response to the pending motion no later than August 25, 2017, and scheduling a hearing on the Motion for Sanctions for September 12, 2017 at 1:30 p.m. On August 24, 2017, Sacks filed a Motion for Extension of Time for Filing Responses to Pending Motions and Scheduling Order, stating that the extension that the hearing judge had granted was insufficient. On August 31, 2017, the hearing judge denied the Motion for Extension.

On September 5, 2017—eleven days late—Sacks filed a response to the Motion for Sanctions. On the same date, Sacks filed a Motion for Continuance, requesting that the hearing judge postpone the hearing on the Motion for Sanctions due to a conflict with a proceeding in the District Court of Maryland, sitting in Frederick County. On September 7, 2017, the hearing judge denied the Motion for Continuance, and directed Sacks to contact her chambers for assistance in moving to postpone the proceeding in the District Court. Sacks did not do so.

On the morning of September 12, 2017, Sacks sent the hearing judge a letter, again requesting a postponement of the hearing on the Motion for Sanctions that was scheduled for 1:30 p.m. Later on that date, Sacks's secretary telephoned the hearing judge's chambers, and asked whether the judge would conduct the hearing on the Motion for

Sanctions as scheduled. A member of the hearing judge's staff responded in the affirmative. Nonetheless, Sacks's secretary sent the hearing judge correspondence, providing alternative dates when Sacks would be available, and advising that Sacks would be available via telephone after 2 p.m., and could appear before the hearing judge after 4 p.m.

At 1:30 p.m., as scheduled, the hearing judge began the hearing on the Motion for Sanctions. Bar Counsel appeared, but Sacks neither appeared nor telephoned. The hearing judge found that Sacks had "shown that he [was] not going to participate in this [attorney discipline proceeding] in a productive and proper way." The hearing judge also found that, by failing to appear for his deposition without requesting a protective order, Sacks had "show[n] a disregard for" Bar Counsel, the hearing judge, and this attorney discipline proceeding. The hearing judge granted the Motion for Sanctions and issued an Order, stating that the averments in the Petition were deemed admitted, and striking the answer to the Petition. In addition, the Order precluded Sacks from producing any documents at the disciplinary hearing and from calling any witnesses, other than himself, at the disciplinary hearing, and precluded Sacks from providing testimony on "any matter other than alleged mitigation[,]" including any testimony that contradicted the averments in the Petition. At 2:02 p.m., the hearing on the Motion for Sanctions concluded.

At approximately 4 p.m., Sacks appeared in the hearing judge's courtroom. At the time, the hearing judge was conducting a jury trial. Sacks insisted on the opportunity to argue against the Motion for Sanctions; he sat down in the courtroom and "made it clear [that] he would not leave until the [hearing judge] heard him out." The hearing judge called

the attorney discipline proceeding, and advised Sacks that she had granted the Motion for Sanctions due to his failure to appear at the hearing. "[N]umerous times[,]" the hearing judge "politely ask[ed]" Sacks to leave the courtroom so that she could resume the jury trial. Sacks, however, continued to argue; he "would not stop speaking and would not leave the courtroom[.]" The hearing judge "was forced to call a" Deputy Sheriff to escort Sacks from the courtroom.

On September 25, 2017, Sacks filed a Motion to Revise, Alter and Amend Order Granting Sanctions Against Sacks, and a Motion to Vacate Order Granting Sanctions Against Sacks and Request for Hearing. On October 2, 2017, the hearing judge conducted a pre-hearing conference, at which she gave Sacks the opportunity to argue in favor of his pending motions. Sacks stated that he was not prepared to do so, and requested that the hearing judge schedule a motions hearing. The hearing judge scheduled a motions hearing for October 10, 2017.

On October 9, 2017, the day before the scheduled hearing, Sacks filed the following documents: an Amendment by Interlineation to the response to the Motion for Sanctions; an Amendment by Interlineation to the Motion to Revise, Alter and Amend; a Motion to Recuse; two Motions to Dismiss the Petition for Disciplinary or Remedial Action; a Petition to Show Cause Why Bar Counsel Should Not Be Held in Contempt; and a Motion for Continuance. On October 10, 2017, the hearing judge conducted a motions hearing, and denied all of Sacks's pending motions.

On October 16, 17, and 19, 2017, the hearing judge conducted the disciplinary hearing. In her opinion, the hearing judge observed "that a hearing judge in an attorney

discipline proceeding may refrain from conducting an evidentiary hearing where the hearing judge has entered an order of default that has not been vacated." (Quoting Attorney Grievance Comm'n v. Johnson, 450 Md. 621, 642, 150 A.3d 338, 351 (2016), reconsideration denied (Jan. 19, 2017)). The hearing judge explained that the order granting the Motion for Sanctions was "the functional equivalent of" an order of default. Accordingly, the hearing judge "determined that a 'full-blown' evidentiary hearing was unnecessary." (Quoting Johnson, id. at 642, 150 A.3d at 351; Attorney Grievance Comm'n v. Thomas, 440 Md. 523, 550, 103 A.3d 629, 645 (2014)).

At oral argument before this Court, Bar Counsel explained that, despite the grant of the Motion for Sanctions and the hearing judge's determination that a full disciplinary hearing was unnecessary, the hearing spanned three days because, after Bar Counsel's case-in-chief—which lasted "approximately five minutes"—Sacks was given the opportunity "to collaterally attack" what had occurred during the attorney discipline proceeding, and to offer evidence of mitigating factors. At the disciplinary hearing, Sacks made a renewed motion to recuse,[6] a motion to stay, a motion to exclude cross-examination, a motion for judgment, and a motion to reconsider. The hearing judge denied all of Sacks's motions.

On December 11, 2017, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Sacks had violated MLRPC 1.2,

---

[6]On November 16 or 17, 2017, in this Court, Sacks filed a Motion to Recuse Judge, requesting "[t]hat this Court enter an Order recusing itself[,]" and "[t]hat this case be assigned to a retired judge in a jurisdiction outside of Baltimore City[.]" On November 22, 2017, this Court denied the motion.

1.3, 1.4, 1.5, 1.15, 1.16(d), 3.1, 3.4(c), 3.4(d), 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(a).

In a Notice dated December 11, 2017, the Clerk of this Court advised Sacks that oral argument had been scheduled for March 2018, and that any exceptions to the hearing judge's findings of fact and conclusions of law were due on December 26, 2017. On December 15, 2017, Sacks filed a Motion for Extension of Time for Filing Exceptions, requesting an extension to January 5, 2018. Later on that date, this Court granted the Motion for Extension. On December 29, 2017, Sacks filed a second Motion for Extension of Time for Filing Exceptions, requesting an extension to January 25, 2018. On January 3, 2018, this Court granted the second Motion for Extension. On January 23, 2018, Sacks filed a third Motion for Extension of Time for Filing Exceptions, requesting an extension to "at least the third week of" February 2018, and requesting that this Court reschedule oral argument "at least until" April 2018. On January 24, 2018, Bar Counsel filed an Opposition to the third Motion for Extension. On January 25, 2018, this Court denied the third Motion for Extension. Sacks failed to file any exceptions to the hearing judge's findings of fact and conclusions of law by the January 25, 2018 deadline. Between that date and the date of oral argument, Sacks filed multiple motions, all of which this Court denied.[7]

[7]On February 5, 2018, Sacks filed a "Motion to Revise, Alter[,] and Amend Denial of Extension of Time to File Exceptions[.]" On February 6, 2018, Sacks filed a "Motion to Dismiss and/or Motion to Strike Findings of Fact and Conclusions of Law for Failure of the Hearing Judge [to] File[] Written Findings of Facts and Conclusions of Law No Later Than Forty-Five [] Days After the Conclusion of the Hearing[.]" On February 9, 2018, Bar Counsel filed Oppositions to the motions, and this Court denied the motions.

On February 21, 2018, Sacks filed a Motion for Continuance of Oral Argument. On February 23, 2018, Bar Counsel filed an opposition to the Motion for Continuance; this Court denied the Motion for Continuance; Sacks filed a 110-page document entitled

On March 6, 2018, we heard oral argument. Later on that date, we issued a *per curiam* order disbarring Sacks.[8] See Attorney Grievance Comm'n v. Sacks, ___ Md. ___, ___ A.3d ___, Misc. Docket AG No. 42, Sept. Term, 2016, 2018 WL 1165423, at *1 (Md. Mar. 6, 2018) (per curiam). We now explain the reasons for Sacks's disbarment.[9]

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On June 29, 1972, this Court admitted Sacks to the Bar of Maryland. At all relevant times, Sacks maintained an office for the practice of law in Baltimore City.

---

"Exceptions"; Bar Counsel filed a Motion to Strike Sacks's Exceptions; and this Court granted the Motion to Strike.

On February 26, 2018, Sacks filed an "Amendment by Interlineation to Exceptions[.]" On February 27, 2018, Sacks filed a second Motion for Continuance of Oral Argument, and this Court denied the same, treated the "Amendment by Interlineation to Exceptions" as a supplement to Sacks's "Exceptions[,]" and struck the same. On March 5, 2018, Sacks filed a "Motion to Dismiss and/or a Remand[.]" On March 6, 2018, this Court treated the "Motion to Dismiss and/or a Remand" as "another belated attempt to file exceptions[,]" and denied the same.

[8]"Where a lawyer's misconduct is so egregious that there is an urgent need to protect the public from the lawyer's practice of law, this Court may exercise its discretion to disbar the lawyer immediately after oral argument, and to explain the reasons in a subsequent opinion." Attorney Grievance Comm'n v. Barnett, 440 Md. 254, 259 n.2, 102 A.3d 310, 313 n.2 (2014) (citation omitted).

[9]On March 7, 2018, Sacks filed a Motion to Supplement Oral Argument. On March 9, 2018, Sacks filed a Motion to Dismiss Petition and/or Strike Order of Disbarment. On March 30, 2018, Sacks filed a Motion to Reconsider. On April 4, 2018, Sacks filed a Supplement to Motion to Reconsider by Interlineation. On April 5, 2018, Sacks filed another Supplement to Motion to Reconsider by Interlineation, as well as a Motion to Reconsider Award of Costs and Expenses. To reiterate, Sacks failed to file any exceptions to the hearing judge's findings of fact and conclusions of law by the January 25, 2018 deadline. As such, we deny the Motion to Supplement Oral Argument, the Motion to Dismiss Petition and/or Strike Order of Disbarment, the Motion to Reconsider, the Supplements to Motion to Reconsider by Interlineation, and the Motion to Reconsider Award of Costs and Expenses, in which Sacks makes factual allegations, or otherwise raises challenges to this attorney discipline proceeding.

- 10 -

We discuss Sacks's representation of seven clients—Harris, Whyte, Chen, Anderson, the Ranges, and Smith—in chronological order by the dates on which he was retained. Afterward, we discuss Sacks's own cases.

**Sacks's Representation of Harris**

In the Circuit Court for Wicomico County, the State charged Harris with first-degree murder and other crimes. On March 3, 2008, Darlene Bailey, Harris's mother, retained Sacks to represent him. The retainer agreement provided that Harris would pay Sacks a fee of $14,000, and that Sacks would separately bill Harris for expenses. Between March 1, 2008 and October 28, 2008, on Harris's behalf, Sacks collected from Harris's family $40,350, which included the $14,000 fee. Sacks misrepresented to Harris and his family that the $26,350 that he had collected in excess of the $14,000 fee was "for fees and expenses." Sacks failed to provide Harris or Bailey with billing statements, invoices, or accountings. The hearing judge did not explain how Sacks collected the $40,350 without issuing billing statements or invoices.

On October 30, 2008, Harris's trial began. A jury found Harris guilty of first-degree murder and other crimes. In February 2009, Harris terminated Sacks's representation, and retained Kenneth Ravenell to represent him at the sentencing proceeding and on appeal. Sacks provided Ravenell with Harris's file, which included CDs and DVDs with witnesses' statements.

On November 10, 2011, Bailey sued Sacks for breach of contract. Subsequently, Harris joined the breach of contract case as a plaintiff.

In or about March 2012, Harris retained Thomas Donnelly to represent him in

- 11 -

seeking postconviction relief. Ravenell provided Donnelly with Harris's file, including the CDs and DVDs. On September 25, 2012, on Harris's behalf, Donnelly filed a petition for postconviction relief, contending that Sacks had provided ineffective assistance of counsel.

On January 8, 2013, Sacks wrote to Donnelly, requesting that he provide Sacks with the CDs and DVDs so that he could use them in the breach of contract case. On February 28, 2013, Sacks issued to Donnelly a subpoena for Harris's file. On March 28, 2013, in compliance with the subpoena, Donnelly provided Sacks with Harris's file. Sacks promised to return Harris's file to Donnelly within two weeks.

Sacks filed a motion to dismiss the breach of contract case. In support of the motion, Sacks fabricated five retainer agreements that falsely purported to have been signed by Bailey.

In June 2013, Sacks returned to Donnelly all of Harris's file, except the CDs and DVDs. On June 26, 2013, on Harris's behalf, Donnelly filed an amended petition for postconviction relief, raising additional allegations of ineffective assistance of counsel by Sacks. Between June 2013 and March 2014, on numerous occasions, Donnelly contacted Sacks's office, requesting that he return the CDs and DVDs. Sacks failed to do so.

On June 30, 2014, Harris filed a complaint against Sacks with Bar Counsel. In a letter dated August 6, 2014, Bar Counsel requested from Sacks a response to Harris's complaint within fifteen days. Sacks requested, and Bar Counsel agreed to, multiple extensions of time to respond to Harris's complaint. At some point, Bar Counsel requested not only a response to Harris's complaint, but also an accounting of the $40,350 that Sacks had collected from Harris's family on Harris's behalf. In a letter dated October 16, 2014,

Bar Counsel advised Sacks that Harris's complaint had been docketed for further investigation, and requested a response to Harris's complaint within ten days. On July 23, 2015, Sacks provided a response to Harris's complaint. In the response, Sacks failed to provide an accounting of the $40,350 that he had collected on Harris's behalf.

**Sacks's Representation of Whyte**

In or about 2008, Whyte's boyfriend was murdered. During the investigation of the murder, Whyte gave a statement to law enforcement officers, and testified before a grand jury. As of January 2013, the Office of the United States Attorney for the District of Maryland was preparing to prosecute someone other than Whyte for the murder. And, Whyte became concerned about her safety.

On January 13, 2013, Whyte retained Sacks to help her prepare for, and to be present at, a meeting with the Assistant United States Attorney who was the prosecutor in the case. Sacks agreed to do so, and also agreed to be present at any hearing or trial in the case. The retainer agreement provided that Whyte would pay Sacks a fee of $1,500. Whyte initially paid Sacks $750. On January 15, 2013, Whyte paid Sacks $500. Sacks failed to deposit the $1,250 that Whyte had paid him into an attorney trust account, despite not having earned the $1,250.

On January 22, 2013, Sacks and Whyte met with the Assistant United States Attorney, who assured Whyte that she had no reason to be concerned about her safety. The meeting lasted approximately seven minutes. After the meeting, Whyte asked Sacks for a partial refund. Sacks refused, and terminated the representation. Sacks failed to deposit the disputed funds into an attorney trust account pending resolution of the fee dispute. The

hearing judge found that Sacks misappropriated Whyte's funds.

On January 29, 2013, Sacks wrote to Whyte, demanding the $250 remainder of the $1,500 fee. Whyte wrote to Sacks, requesting an itemization of the $1,250 that she had paid him. Sacks failed to respond.

On September 11, 2014, Whyte filed a complaint against Sacks with Bar Counsel. In a letter dated October 9, 2014, Bar Counsel requested from Sacks a response to Whyte's complaint within fifteen days. Sacks failed to respond. In a letter dated November 17, 2014, Bar Counsel advised Sacks that Whyte's complaint had been docketed for further investigation, and requested, no later than November 27, 2014, copies of Whyte's file, any retainer agreements, and documents that were related to the $1,250 that Whyte had paid Sacks. On December 22, 2014, Bar Counsel received Sacks's response to Whyte's complaint. Sacks failed to provide a complete copy of Whyte's file, or any documents that that were related to the $1,250 that Whyte had paid him.

### Sacks's Representation of Chen

On September 11, 2013, Chen retained Sacks to assist him in attempting to have the Federal Bureau of Investigation return certain personal property to him. Sacks charged a fee of $5,000. Chen paid Sacks $2,500. Chen paid Sacks, at least in part, by providing him with post-dated checks. Sacks failed to deposit the $2,500 that Chen had paid him into an attorney trust account, despite not having earned the $2,500. In late September 2013, Chen terminated Sacks's representation, and requested that Sacks refund the $2,500. Sacks refused to do so, and failed to return Chen's post-dated checks. The hearing judge found that Sacks misappropriated Chen's funds.

On October 2, 2013, Chen filed a complaint against Sacks with Bar Counsel. In a letter dated October 8, 2013, Bar Counsel requested from Sacks a response to Chen's complaint within fifteen days. Sacks requested, and Bar Counsel granted, multiple extensions of time to respond to Chen's complaint. On January 13, 2014, Sacks provided a response to Chen's complaint in which he failed to address several of Chen's allegations. On February 28, 2014, Bar Counsel wrote to Sacks, requesting that he confirm, no later than March 10, 2014, whether he had kept the $2,500 that Chen had paid him in an attorney trust account until he had earned it. Sacks requested, and Bar Counsel granted, multiple extensions of time to respond to the letter. On April 14, 2014, Sacks wrote to Bar Counsel, admitting that he had not deposited the $2,500 that Chen had paid him into an attorney trust account.

On May 28, 2014, Bar Counsel wrote to Sacks, advising him that Chen's complaint had been docketed for further investigation, and requesting, within fifteen days, a copy of Chen's file, an accounting of the $2,500 that Chen had paid Sacks, copies of any related attorney trust account records, and an explanation as to why Sacks had failed to return Chen's post-dated checks. Sacks requested, and Bar Counsel granted, multiple extensions of time to provide the documents and information. Sacks wrote to Bar Counsel, but failed to provide the documents or information.

### Sacks's Representation of Anderson

In March 2000, Anderson, a citizen of Jamaica, became a lawful permanent resident of the United States on a conditional basis. On July 29, 2003, in the Circuit Court for Baltimore City, Anderson pled guilty to possession of cocaine. On January 24, 2005, in

the circuit court, a jury found Anderson guilty of first-degree assault and assault with a deadly weapon. On December 5, 2013, the Department of Homeland Security detained Anderson, and initiated a removal proceeding.

Anderson authorized Lashaun Roberts-Marshall, his fiancé, to retain counsel on his behalf, and to receive information about the possession case, the assault case, and the immigration case. In or about December 2013, Roberts-Marshall retained Raymond Griffith to file a petition for writ of error coram nobis in the possession case, and to represent Anderson in the immigration case. Griffith advised Anderson to retain another lawyer to file a petition for postconviction relief in the assault case. On February 25, 2014, on Anderson's behalf, Griffith filed a petition for writ of error coram nobis in the possession case.

On March 1, 2014, Roberts-Marshall met with Sacks for the purpose of retaining him to file a petition for postconviction relief in the assault case. Sacks insisted that he would do so only if he also represented Anderson in the possession case and the immigration case. Roberts-Marshall agreed, and retained Sacks to represent Anderson in the possession case, the assault case, and the immigration case. Sacks charged a fee of $5,000 to represent Anderson in the possession case, a fee of $6,000 to represent him in the assault case, and a fee of $3,500 to represent him in the immigration case. By May 18, 2014, Roberts-Marshall had paid Sacks in full. Sacks failed to deposit the $14,500 that Roberts-Marshall had paid him into an attorney trust account, despite not having earned the $14,500. The hearing judge found that Sacks misappropriated Roberts-Marshall's funds.

On March 24, 2014, on Anderson's behalf, Sacks appeared before the Immigration Court, and misrepresented that he had become involved with the immigration case on March 13, 2014. Sacks moved to postpone so that he would have time to file an amended petition for writ of error coram nobis in the possession case, and a petition for postconviction relief in the assault case. The Immigration Court postponed the immigration case until April 18, 2014.

On April 18, 2014, Sacks appeared before the Immigration Court, and moved to postpone again. The Immigration Court postponed the immigration case until May 19, 2014. On May 9, 2014, Sacks filed an amended petition for writ of error coram nobis in the possession case. On May 19, 2014, Sacks appeared before the Immigration Court, advised that he had filed an amended petition for writ of error coram nobis in the possession case, and misrepresented that he had also filed a petition for postconviction relief in the assault case. The Immigration Court postponed the immigration case until June 16, 2014, and directed Sacks to file copies of the amended petition for writ of error coram nobis and the petition for postconviction relief with the Immigration Court. Sacks failed to do so, even after he subsequently filed a petition for postconviction relief in the assault case on June 6, 2014. The hearing judge found that Sacks's failure to file a copy of the petition for postconviction relief with the Immigration Court was an attempt to deceive the Immigration Court as to when he had filed the petition for postconviction relief.

On June 5, 2014, the circuit court denied the amended petition for writ of error coram nobis. Sacks failed to advise Anderson as much. On June 16, 2014, Sacks failed to appear before the Immigration Court. The Immigration Court postponed the immigration

case until June 30, 2014, and directed Sacks to file, before that date, a line explaining his failure to appear. On June 30, 2014, Sacks appeared before the Immigration Court, and brought a line explaining his failure to appear. Sacks made a motion for another postponement, which the Immigration Court denied. The Immigration Court ordered Anderson removed. Anderson had thirty days to appeal. Sacks asked Roberts-Marshall to pay him an additional $5,000 to handle an appeal in the immigration case.

On July 3, 2014, Sacks filed a notice of appeal in the possession case. The notice of appeal, however, was not docketed by the circuit court's clerk's office.

On July 15, 2014, Anderson terminated Sacks's representation, and requested a copy of his file. Anderson needed a copy of his file immediately, as he had only approximately two weeks left to appeal in the immigration case. On numerous occasions, Roberts-Marshall requested a copy of Anderson's file, as well as transcripts that she had given to Sacks. Sacks failed to respond. The hearing judge did not specify whether Anderson appealed in the immigration case.

On August 11, 2014, Sacks telephoned Roberts-Marshall and stated that he would provide a copy of Anderson's file to her. On August 22, 2014, Sacks telephoned Roberts-Marshall and repeated that he would provide a copy of Anderson's file to her. On August 27, 2014, Roberts-Marshall received copies of the amended petition for writ of error coram nobis and the petition for postconviction relief, without copies of exhibits that had been attached to them.

On December 24, 2014, even though Anderson had terminated his representation, Sacks filed in the possession case a second notice of appeal and a motion to accept late

filing. Sacks failed to advise Anderson or Roberts-Marshall as much.

On April 15, 2015, the circuit court conducted a hearing on the petition for postconviction relief. Sacks appeared at the hearing, and argued on Anderson's behalf. At that time, Sacks had not had any contact with Anderson since July 2014. On the same date, Sacks advised Anderson that his brief in the appeal in the possession case was due the following month. Sacks requested $5,000 to pursue the appeal, and refused to withdraw his appearance in the appeal. On April 17, 2015, Anderson wrote to Sacks, requesting that he withdraw his appearance in the appeal. Sacks refused again. On April 29, 2015, in the Court of Special Appeals, on his own behalf, Anderson filed a motion to strike Sacks's appearance in the appeal in the possession case.

In the meantime, on July 31, 2014, Anderson filed a complaint against Sacks with Bar Counsel. In a letter dated August 6, 2014, Bar Counsel requested from Sacks a response to Anderson's complaint with fifteen days. Sacks requested, and Bar Counsel granted, multiple extensions of time to respond to Anderson's complaint. In a letter dated September 11, 2014, Bar Counsel requested not only a response to Anderson's complaint, but also an accounting of the $14,500 that Roberts-Marshall had paid Sacks, and all related bank records.

As of December 5, 2014, Sacks had failed to respond to Anderson's complaint. Bar Counsel advised Sacks that Anderson's complaint had been docketed for further investigation, and requested certain information and documents no later than December 15, 2014. On January 16, 2015, Bar Counsel received Sacks's response to Anderson's complaint. Sacks failed to provide any bank records that were related to the $14,500 that

Roberts-Marshall had paid him.

### Sacks's Representation of the Ranges

On April 3, 2014, in the District Court of Maryland, sitting in Washington County, the State charged Mr. Range with child abuse. Later on that date, Mr. Range was arrested. Mr. Range authorized Ms. Range, his wife, to make all decisions regarding the retention and termination of counsel.

On April 6, 2014, Ms. Range left a voicemail for Sacks, requesting that he call her back. Later on that date, Sacks telephoned Ms. Range, stating that he would represent Mr. Range if she deposited $1,500 into his bank account the following day. On April 7, 2014, Ms. Range and her family deposited $1,500 into Sacks's bank account. Sacks failed to deposit the $1,500 that Ms. Range and her family had paid him into an attorney trust account, despite not having earned the $1,500.

On April 10, 2014, on Mr. Range's behalf, Sacks appeared at a hearing in the District Court. Later on that date, Sacks showed Ms. Range two retainer agreements. One retainer agreement provided that Sacks would represent Mr. Range in the District Court for $1,500. The other retainer agreement provided that Sacks would represent Mr. Range in the Circuit Court for Washington County for $7,500. After Ms. Range questioned Sacks, he reduced the fee for representing Mr. Range in the circuit court to $6,250, provided that Ms. Range paid in full by June 2014. Ms. Range signed both retainer agreements. Sacks failed to provide Ms. Range with a copy of either retainer agreement.

On April 18, 2014, Ms. Range paid Sacks $1,700. On May 1, 2014, Ms. Range retained Sacks to represent her in a child support case. Ms. Range paid Sacks a fee of $750

- 20 -

to represent her. On May 8, 2014, Ms. Range paid Sacks another $1,000. On or about May 17, 2014, Ms. Range paid the balance of the fee that was due under the retainer agreement. Sacks failed to deposit the funds that Ms. Range had paid him into an attorney trust account, despite not having earned the funds. The hearing judge found that Sacks misappropriated Ms. Range's funds.

On May 19, 2014, Mr. Range, who was dissatisfied with Sacks's representation, told Ms. Range to meet with a lawyer named Kadish. On May 22, 2014, Ms. Range retained Kadish to replace Sacks as Mr. Range's counsel. Later on that date, Kadish telephoned Sacks, stated that he had been retained to replace Sacks as Mr. Range's counsel, and asked to make arrangements to pick up Mr. Range's file and the $6,250 that Ms. Range had paid Sacks to represent Mr. Range in the circuit court. Sacks stated that he was unable to speak at the time, and would call Kadish back. Sacks failed to do so.

On the same date, Kadish e-mailed Sacks, reiterating that he had been retained to replace Sacks as Mr. Range's counsel. Kadish stated that Ms. Range requested that Sacks send to Kadish's firm the $6,250 that Ms. Range had paid Sacks for his representation of Mr. Range in the circuit court. Kadish advised that Sacks could not have earned any of the $6,250, as, at the time, there was no case number for Mr. Range's case in the circuit court. Kadish instructed Sacks not to enter his appearance in Mr. Range's case in the circuit court. Kadish stated that, if Sacks had not entered his appearance in Ms. Range's case, she wanted him to return the $750 that she had paid him for representing her. On the same date, Kadish mailed Sacks a letter in which he stated that a law clerk from his firm would come to Sacks's office to retrieve Mr. Range's file and a check for $6,250.

On the same date, after being telephoned by Kadish, Sacks went to the detention center and met with Mr. Range. Sacks handwrote on a legal pad the following:

I[,] Rondell Range[,] want Stephen H. Sacks to continue to be my attorney in the case of State v. Rondell Range in the Circuit Court for Washington County for the offense[] of child abuse[,] and also in the [child in need of assistance] proceeding[.[10]] I have been advised by Sacks that he has been in contact [with] another lawyer to take over the case[,] but I want [] Sacks to continue as my attorney[.] I do not want another attorney.

Mr. Range signed the document without reading it. The hearing judge found that Sacks had Mr. Range sign the document in an attempt to "surreptitiously . . . circumvent" his decision to terminate Sacks's representation, and to keep the $6,250 that Ms. Range had paid him to represent Mr. Range in the circuit court.

Later on that date, in the circuit court, the State filed a criminal information against Mr. Range. Still later on that date, with Kadish's assistance, Mr. Range posted bail, and was released from the detention center. While waiting for Mr. Range to be released, Ms. Range encountered Sacks at the detention center. Ms. Range asked Sacks to return Mr. Range's file and the $6,250 that Ms. Range had paid Sacks to represent Mr. Range in the circuit court.

On May 23, 2014, Mr. Range left a voicemail for Sacks, stating that his representation had been terminated, and that he was to provide Kadish with his file and the $6,250 that Ms. Range had paid Sacks to represent him in the circuit court. Sacks refused to comply. On May 27, 2014, even though Mr. Range had terminated his representation,

---

[10]Aside from quoting the document that Sacks wrote, the hearing judge did not mention a child in need of assistance case.

Sacks entered his appearance in Mr. Range's case in the circuit court.

On May 28, 2014, Kadish filed a complaint against Sacks with Bar Counsel. On July 29, 2014, Bar Counsel requested from Sacks a response to Kadish's complaint within ten days. Bar Counsel also requested an accounting of all of the funds that Ms. Range and her family had paid him to represent Mr. Range, as well as related bank records. Sacks requested, and Bar Counsel granted, multiple extensions of time to respond to Kadish's complaint.

On December 20, 2014, Bar Counsel caused to be served on Sacks a subpoena for any attorney trust account records from January 1, 2013 through November 30, 2014. Sacks failed to comply with the subpoena, and filed a frivolous Motion to Quash with the Attorney Grievance Commission. On December 23, 2014,[11] Sacks provided a response to Kadish's complaint. In his response, Sacks intentionally misrepresented the terms of his representation of Mr. Range. Sacks attached an altered retainer agreement to his response to Kadish's complaint. The hearing judge did not specify what misrepresentations Sacks made in his response to Kadish's complaint, or how Sacks altered the retainer agreement that was attached to his response to Kadish's complaint. Sacks failed to provide a complete accounting of the funds that Ms. Range and her family had paid him to represent Mr. Range, or related bank records.

### Sacks's Representation of Smith

In or about July 2014, Smith retained Sacks to represent him in a domestic matter.

---

[11]The hearing judge inadvertently referred to December 23, 2013.

In the following months, Smith retained and paid Sacks to represent him in various other matters. Sacks failed to deposit Smith's funds into an attorney trust account. In or about September 2014, Smith terminated Sacks's representation, and requested a refund of any unearned fees. Sacks failed to provide a refund, or an accounting of Smith's funds. The hearing judge found that Sacks misappropriated Smith's funds.

On October 9, 2014, Smith filed a complaint against Sacks with Bar Counsel. In a letter dated November 17, 2014, Bar Counsel requested from Sacks a response to Smith's complaint within fifteen days. Sacks requested, and Bar Counsel granted, multiple extensions of time to respond to Smith's complaint. On July 9, 2015, Sacks provided a response to Smith's complaint. Sacks failed to provide an accounting of Smith's funds.

### Sacks's Cases

In 1992, Sacks entered into a residential lease with Tindeco. Shortly afterward, Sacks moved into an apartment at Tindeco. In 2006, Tindeco retained Spence to represent it with regard to Sacks's various alleged breaches of the lease. In October 2011, Tindeco informed Sacks that it would not renew the lease.

Subsequently, while self-represented, Sacks initiated eight frivolous actions or appeals against Tindeco, its employees, its counsel, and/or various State agencies and officials.[12] In chronological order by the dates on which the frivolous actions were

---

[12]In this attorney discipline proceeding, Tindeco and certain other parties to the actions or appeals that Sacks had initiated moved for protective orders against Sacks, moved for sanctions, and moved to quash Sacks's subpoenas, including his subpoena for entire files on nine cases. The parties contended that the subpoena's purpose was to harass, annoy, and unduly burden them. The hearing judge found that the parties had shown good

initiated—or, with regard to the frivolous appeals, the dates on which the actions that underlay the frivolous appeals were initiated—the eight frivolous actions or appeals were:[13]

1.      Stephen H. Sacks v. Tindeco Wharf, LLC, No. 2238, Sept. Term, 2014 (Md. Ct. Spec. App.), which was an appeal of a judgment in Tindeco Wharf, LLC v. Stephen H. Sacks, No. 24-C-14-003409 (Md. Cir. Ct. Balt. City), which originated in Tindeco Wharf, LLC v. Stephen H. Sacks, No. 0101-0008374-2014 (Md. Dist. Ct. Balt. City);

2.      Stephen H. Sacks v. Adam M. Spence, Esquire, et al., No. 24-C-14-002626 (Md. Cir. Ct. Balt. City);

3.      Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-14-006060 (Md. Cir. Ct. Balt. City);

4.      Stephen H. Sacks, Esq. v. Tindeco Wharf, LLC, et al., No. 24-C-15-001532

_____

cause for a protective order.  On June 9, 2017, the hearing judge issued a Screening Order, under which the parties would not be obligated to respond to Sacks's filings unless the hearing judge approved them.  The Screening Order stated, in pertinent part:

> Every pleading or paper [that is] filed by [] Sacks on his own behalf . . . against [the parties] shall bear the following legend . . . : This filing is subject to the Screening Order[.] . . . Any party opposing this filing has no obligation to file an opposition unless the [hearing judge] approves the paper for filing and requires a response.

On July 21 and August 9, 2017, Sacks filed notices of appeal of the Screening Order to the Court of Special Appeals.  On August 14, 2017, the Court of Special Appeals transferred the appeals to this Court.  On August 17, 2017, this Court dismissed the notices of appeal. No issue as to the Screening Order is properly before us.

[13]We have supplemented the list of actions and appeals with additional information from the Maryland Judiciary Case Search for purposes of the chronology and full case names.

(Md. Cir. Ct. Balt. City), which originated in <u>Stephen H. Sacks, Esquire v. Tindeco Wharf LLC, et al.</u>, No. 0101-0024089-2014 (Md. Dist. Ct. Balt. City);

5.　　<u>Stephen H. Sacks v. Tindeco Wharf, LLC, et al.</u>, No. 24-C-15-001101 (Md. Cir. Ct. Balt. City);

6.　　<u>Stephen H. Sacks, Esq. v. Daniel L. Sussman, Esq.</u>, No. 24-C-15-003761 (Md. Cir. Ct. Balt. City), and the related case of <u>Daniel L. Sussman v. Stephen Sacks</u>, No. 0101-0014027-2015 (Md. Dist. Ct. Balt. City);

7.　　<u>Stephen H. Sacks v. Tindeco Wharf, LLC</u>, No. 0101-0006317-2016 (Md. Dist. Ct. Balt. City); and

8.　　<u>Stephen H. Sacks v. Tindeco Wharf, LLC et al.</u>, No. 24-C-16-004897 (Md. Cir. Ct. Balt. City).

The hearing judge did not discuss these eight actions or appeals, beyond finding that they were frivolous.

In the Petition for Disciplinary or Remedial Action, Bar Counsel characterized as frivolous these eight actions or appeals, as well as <u>Stephen H. Sacks v. Tindeco Wharf, LLC, et al.</u>, No. 24-C-11-008407 (Md. Cir. Ct. Balt. City), which is not listed above. In this action, Tindeco and other defendants requested attorneys' fees on the ground that Sacks had initiated the action in bad faith or without substantial justification. The circuit court denied the defendants' request for attorneys' fees, finding that Sacks had not initiated the action in bad faith or without substantial justification. The circuit court found that Sacks had a reasonable basis to believe that there were issues for a finder of fact to resolve. The circuit court observed that six of the thirty-five counts were submitted to a jury, which

found in Sacks's favor as to two counts. The circuit court determined that, even if Sacks relied on "innovative or tenuous legal theories" that the circuit court did not endorse, that circumstance alone did not warrant sanctions. Because the circuit court had found that Sacks had not initiated the action in bad faith or without substantial justification, the hearing judge found that, notwithstanding the averment in the Petition for Disciplinary or Remedial Action, Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407 was not frivolous.

The hearing judge found that, during litigation that involved Tindeco, Sacks "intentionally perverted the [Maryland] Rules . . . to attack opposing counsel and parties in an effort to pursue his personal vendetta." During the litigation that involved Tindeco, Sacks made numerous intentional misrepresentations to the courts and opposing counsel, and engaged in a pattern of abusive language toward witnesses and lawyers. Sacks committed crimes, including harassing and threatening witnesses and lawyers, and repeatedly trespassing on Tindeco's property. As a result, the State charged Sacks with crimes in the District Court of Maryland, sitting in Baltimore City.[14]

At some point, a trial court ordered Sacks to vacate his residence. Sacks failed to

---

[14]Specifically, in State v. Stephen H. Sacks, No. 5B02290405 (Md. Dist. Ct. Balt. City) and State v. Stephen H. Sacks, No. 3B02275164 (Md. Dist. Ct. Balt. City), the State charged Sacks with trespass, among other crimes. The record does not contain information about the disposition of Sacks's criminal cases.

The hearing judge also mentioned Stephen H. Sacks v. Joan Taylor, No. 24-C-14-006719 (Md. Cir. Ct. Balt. City), which was an appeal of a judgment in Joan Taylor v. Stephen H. Sacks, No. 0101-SP-08780-2014 (Md. Dist. Ct. Balt. City). These two cases were not criminal cases, but instead pertained to a peace order that Joan Taylor—a party to multiple actions or appeals that Sacks had initiated—obtained against Sacks.

comply with the trial court's order. On October 7, 2014, Sacks was evicted. Both before and after the eviction, Sacks failed to take any action to safeguard the voluminous files of clients that were in his residence.

On August 5, 2014, Spence filed a complaint against Sacks with Bar Counsel. On October 14, 2014, Bar Counsel wrote to Sacks, requesting explanations, within seven days of Sacks's receipt of the letter, as to why he failed to comply with the trial court's order, and why he failed to take any action to safeguard his clients' files. On several occasions, Bar Counsel wrote to Sacks, again requesting a response. On November 7, 2014, Sacks wrote to Bar Counsel, but failed to respond in any substantive manner. On multiple occasions, Bar Counsel wrote to Sacks, yet again requesting a response. Sacks failed to respond.

**Sacks's Evidence, Mitigating Factor, and Aggravating Factors**

As noted above, upon granting the Motion for Sanctions based on Sacks's failure to appear for his deposition, the hearing judge issued an Order, precluding Sacks from producing any documents at the disciplinary hearing, and precluding Sacks from calling any witnesses, other than himself, at the disciplinary hearing. Nonetheless, at the disciplinary hearing, Sacks called Spence as a witness,[15] and offered into evidence transcripts of the March 27, 2017 scheduling conference and the June 8, 2017 motions hearing in this attorney discipline proceeding. Sacks offered the transcripts in an attempt to support his allegation that Bar Counsel had told him that, if he ever needed an extension,

---

[15]In her opinion, the hearing judge did not discuss Spence's testimony.

he should "just ask[.]"  Sacks contended that Bar Counsel's alleged statement had applied to all discovery issues, and had required Bar Counsel to agree to postpone his deposition.  The transcripts, however, did not reflect this alleged statement by Bar Counsel.  The hearing judge ordered a CD with a recording of the June 8, 2017 motions hearing.  The hearing judge listened to the entirety of the recording, which did not reflect Bar Counsel's alleged statement.

Sacks asserted that Bar Counsel's alleged statement had occurred after the courtroom's regular camera, which records only when the circuit court is in session, had stopped recording.  Sacks asserted that the courtroom's backup camera, which records constantly, had recorded Bar Counsel's alleged statement.  Sacks filed with the circuit court's administrative judge a motion to provide a copy of the June 8, 2017 recording from the courtroom's backup camera.  The circuit court's administrative judge allowed Sacks and Bar Counsel to listen to a limited portion of the June 8, 2017 recording from the courtroom's backup camera.  The recording did not reflect Bar Counsel's alleged statement.

Afterward, Sacks stated that he believed that he had misremembered the date of Bar Counsel's alleged statement, and asserted that it had occurred on June 12, 2017, on which the hearing judge conducted a hearing at which the parties agreed on a date for Sacks's deposition.  Sacks filed with the circuit court's administrative judge a motion to provide a copy of the June 12, 2017 recording from the courtroom's backup camera.  The circuit court's administrative judge allowed Sacks, Bar Counsel, and the hearing judge to listen to the relevant portion of the June 12, 2017 recording from the courtroom's backup camera.

The recording did not reflect Bar Counsel's alleged statement.

In addition to offering the transcripts into evidence and calling Spence as a witness, Sacks testified for more than two hours. A sizeable portion of Sacks's testimony pertained to his and his secretary's illnesses. On multiple occasions, Sacks testified: "[Y]ou can call my doctor"; "you can call the hospital"; and "you can call my secretary[.]" In her opinion, the hearing judge noted that it was not her responsibility to confirm the accuracy of Sacks's testimony about his and his secretary's illnesses.

The hearing judge determined that Sacks's testimony about his and his secretary's illnesses was not evidence of mitigating factors, but instead was testimony through which Sacks attempted to explain his multiple requests for postponements, and through which he contended that the hearing judge's denials of certain such requests were unfair. For example, Sacks argued that he was unable to meet certain deadlines due to his secretary's illness. The hearing judge explained that, when ruling on Sacks's requests for postponements, she always considered Sacks's allegations of medical reasons, and the credibility thereof. The hearing judge observed that, over Bar Counsel's objections, she had granted multiple requests for postponements. The hearing judge noted that, after she denied certain requests for postponements made by Sacks, he still found the time to file various motions.

The hearing judge found that the majority of the evidence that Sacks offered was not evidence of mitigating factors, but instead was evidence through which Sacks attempted to defend against the averments in the Petition. In one part of her opinion, the hearing judge stated that there was "no evidence of mitigation." In another part of her

opinion, however, the hearing judge stated that Sacks's misconduct was mitigated by the absence of prior attorney discipline.

The hearing judge did not expressly address whether there were any aggravating factors. The hearing judge found, however, that Harris's, Whyte's, Chen's, Anderson's, Kadish's, and Smith's complaints against Sacks contained "a common theme[,]" in that Sacks, "it appears, will go to any length to keep funds [that were] paid to him."

## STANDARD OF REVIEW

Bar Counsel did not except to any of the hearing judge's findings of fact and Sacks did not timely except to any of the hearing judge's findings of fact; thus, we "treat the findings of fact as established[.]" Md. R. 19-741(b)(2)(A). In an attorney discipline proceeding, this Court reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## DISCUSSION

### (A) Conclusions of Law

Bar Counsel did not except to any of the hearing judge's conclusions of law and Sacks did not timely except to any of the hearing judge's conclusions of law. Nonetheless, upon independent review, as discussed below, we do not find clear and convincing evidence to support the hearing judge's conclusion that Sacks violated MLRPC 3.1

- 31 -

(Meritorious Claims and Contentions), 3.4(c), and 3.4(d) (Fairness to Opposing Party and Counsel) in one instance. We uphold, however, the remainder of the hearing judge's conclusions of law, including the hearing judge's conclusions that Sacks violated MLRPC 3.1, 3.4(c), and 3.4(d) in other instances.

### MLRPC 1.2(a) (Allocation of Authority Between Client and Lawyer)

MLRPC 1.2(a) states, in pertinent part:

[A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

Without specifying a section of MLRPC 1.2, the hearing judge concluded that Sacks violated MLRPC 1.2 in representing Anderson and Mr. Range. Given that Bar Counsel specifically charged Sacks with violating MLRPC 1.2(a), and given that the hearing judge discussed only MLRPC 1.2(a), it is evident that the hearing judge concluded that Sacks violated MLRPC 1.2(a) in representing Anderson and Mr. Range. We uphold these conclusions.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.2(a) in representing Anderson. After Anderson had terminated his representation, Sacks filed a notice of appeal and a motion to accept late filing on Anderson's behalf, and appeared at a hearing and argued on Anderson's behalf. Sacks refused, on two occasions, to withdraw his appearance in the appeal, forcing Anderson to file a motion to strike Sacks's appearance.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks

violated MLRPC 1.2(a) in representing Mr. Range. The record demonstrates that, even though Mr. Range had terminated his representation, Sacks entered his appearance in Mr. Range's case in the Circuit Court for Washington County.

## MLRPC 1.3 (Diligence)

"A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3. "A lawyer violates MLRPC 1.3 by failing to appear for a scheduled court date without good reason." Attorney Grievance Comm'n v. Haley, 443 Md. 657, 669, 118 A.3d 816, 823 (2015) (cleaned up). The hearing judge concluded that Sacks violated MLRPC 1.3 in representing Anderson. Clear and convincing evidence supports the hearing judge's conclusion. Sacks was retained to file a petition for postconviction relief and an amended petition for writ of error coram nobis. It took Sacks more than two months to file the amended petition for writ of error coram nobis, and more than three months to file the petition for postconviction relief. Moreover, Sacks failed to provide copies of the filings to the Immigration Court upon request, and failed to appear at a proceeding before the Immigration Court.

## MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b) (Communication)

MLRPC 1.4 stated:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in [MLRPC] 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

- 33 -

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [MLRPC] or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded that Sacks violated: MLRPC 1.4(a) and (b) by failing to communicate his fee for representing Harris; MLRPC 1.4 by failing to timely communicate with Anderson and respond to requests for his file; and MLRPC 1.4 by failing to provide copies of retainer agreements to Ms. Range. The hearing judge did not specify a subsection of MLRPC 1.4(a) as to Harris, or a section of MLRPC 1.4 as to Anderson and Mr. Range. Given that the hearing judge observed that Sacks failed to communicate with Harris, it is clear that hearing judge concluded that Sacks violated MLRPC 1.4(a)(2) and 1.4(b) in representing Harris. Given that the hearing judge found that Sacks failed to communicate with Anderson and failed to respond to requests for his file, it is evident that she concluded that Sacks violated MLRPC 1.4(a)(2) and 1.4(a)(3) in representing Anderson. And, given that the hearing judge observed that Sacks failed to communicate with Ms. Range, it is clear that she concluded that Sacks violated MLRPC 1.4(a)(2) in representing Mr. Range. We uphold these conclusions.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.4(a)(2) and 1.4(b) in representing Harris. The retainer agreement provided that Harris would pay Sacks a fee of $14,000, and that Sacks would separately bill Harris for expenses. Sacks, however, collected a total of $40,350 from Harris's family for his representation of Harris. Sacks misrepresented to Harris and his family that the

$26,350 that Sacks had collected in excess of the $14,000 fee was "for fees and expenses." Sacks failed to communicate to Harris that he would collect a fee that was almost triple the one that they had agreed upon. Thus, Sacks failed to keep Harris reasonably informed, in violation of MLRPC 1.4(a)(2), and failed to explain the basis of his fee, in violation of MLRPC 1.4(b).

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.4(a)(2) and 1.4(a)(3) in representing Anderson. In violation of MLRPC 1.4(a)(2), Sacks failed to advise Anderson that the circuit court had denied the amended petition for writ of error coram nobis, and that he had filed a notice of appeal and a motion to accept late filing. Additionally, even though Anderson had terminated Sacks's representation in July 2014, Sacks appeared on Anderson's behalf at the hearing on the petition for postconviction relief on April 15, 2015. In the nine intervening months, Sacks did not communicate with Anderson in any way. Sacks's failure to communicate with Anderson—and, in particular, his failure to advise Anderson that he planned to appear on Anderson's behalf at the hearing—constituted a violation of MLRPC 1.4(a)(2). In violation of MLRPC 1.4(a)(3), Sacks failed to respond to Anderson's and Roberts-Marshall's requests for a copy of Anderson's file.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.4(a)(2) in representing Mr. Range. Ms. Range signed two retainer agreements that pertained to Sacks's representation of Mr. Range. Sacks failed to provide Ms. Range with a copy of either retainer agreement.

- 35 -

**MLRPC 1.5(a) (Reasonable Fees)**

MLRPC 1.5(a) stated:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The facts to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

A lawyer violates MLRPC 1.5(a) where the lawyer "fails to perform any meaningful work on behalf of [a] client in exchange for [a] fee." Attorney Grievance Comm'n v. Allenbaugh, 450 Md. 250, 269, 148 A.3d 300, 312 (2016) (cleaned up).

Without specifying a section of MLRPC 1.5, the hearing judge concluded that Sacks violated MLRPC 1.5 in representing Harris, Anderson, and Mr. Range. Given that Bar Counsel specifically charged Sacks with violating MLRPC 1.5(a), and given that the hearing judge quoted only MLRPC 1.5(a), it is evident that the hearing judge concluded

that Sacks violated MLRPC 1.5(a) in representing Harris, Anderson, and Mr. Range. We uphold these conclusions.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.5(a) in representing Harris. Sacks was retained to represent Harris in a criminal case. On Harris's behalf, Sacks collected $40,350 from Harris's family. That amount was almost triple the agreed-upon fee of $14,000, and was unreasonable.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.5(a) in representing Anderson. Sacks charged a fee of $3,500 to represent Anderson in an immigration case. Aside from appearing at proceedings in the Immigration Court to request postponements, Sacks provided no legal services in the immigration case. Indeed, Sacks failed to appear at one of the proceedings in the Immigration Court. Plainly, the $3,500 fee was unreasonable.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.5(a) in representing Mr. Range. Sacks charged a fee of $6,250 to represent Mr. Range in a criminal case in the Circuit Court for Washington County. The only action that Sacks took on Mr. Range's behalf in the circuit court was entering his appearance, which he did without Mr. Range's authorization or consent, as his representation had been terminated. Clearly, the $6,250 fee was unreasonable.

### MLRPC 1.15(a), 1.15(c), 1.15(d), and 1.15(e) (Safekeeping Property)

MLRPC 1.15 states, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained

pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer[,] and shall be preserved for a period of at least five years after the date the record was created.

* * *

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account[,] and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this [MLRPC] or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive[,] and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claims interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

Without specifying a section of MLRPC 1.15, the hearing judge concluded that, by failing to deposit unearned fees into an attorney trust account, Sacks violated MLRPC 1.15 in representing Whyte, Chen, Anderson, the Ranges, and Smith. Bar Counsel charged Sacks with violating MLRPC 1.15(a), 1.15(c), and 1.15(d) in representing all six of the

clients.[16]  Bar Counsel charged Sacks with violating MLRPC 1.15(e) in representing Whyte, Anderson, and the Ranges.  Upon our independent review of the hearing judge's conclusion that Sacks violated MLRPC 1.15 in representing Whyte, Chen, Anderson, the Ranges, and Smith, we conclude that clear and convincing evidence establishes that Sacks violated each of the sections of MLRPC 1.15 that Bar Counsel charged him with violating, except he did not violate MLRPC 1.15(e) in representing Anderson.

Clear and convincing evidence establishes that Sacks violated MLRPC 1.15(a), 1.15(c), and 1.15(d) in representing Whyte, Chen, Anderson, the Ranges, and Smith.  Sacks received funds for representing these clients, and failed to deposit any of the funds into an attorney trust account, despite not having earned them.  Accordingly, Sacks: failed to keep the funds "in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules," MLRPC 1.15(a); failed to "deposit legal fees . . . that ha[d] been paid in advance into a client trust account[,] and [to] withdraw those funds for [Sacks]'s own benefit only as fees [were] earned[,]" MLRPC 1.15(c); and failed to "deliver promptly to the client[s] any funds . . . that the client[s were] entitled to receive[,]" MLRPC 1.15(d).

Clear and convincing evidence establishes that Sacks violated MLRPC 1.15(e) in representing Whyte and the Ranges.  All three of these clients requested refunds.  Specifically, Whyte asked for a partial refund of the $1,250 that she had paid Sacks; and, through Kadish, Mr. Range's new counsel, Ms. Range requested the $6,250 that she had

---

[16]Bar Counsel also charged Sacks with violating MLRPC 1.15(a) and 1.15(d) in representing Harris.  Before the hearing judge, however, Bar Counsel withdrew these charges.

paid Sacks to represent Mr. Range in the Circuit Court for Washington County, as well as the $750 that she had paid Sacks for representing her, if he had not entered his appearance in her case. Once the fee disputes arose, both Sacks and his clients claimed interests in the funds, requiring Sacks to keep the funds in an attorney trust account "until the dispute[s were] resolved." MLRPC 1.15(e). In other words, independent of Sacks's duty to deposit the funds into an attorney trust account upon receipt under MLRPC 1.15(a), 1.15(c), and 1.15(d), MLRPC 1.15(e) obligated Sacks to deposit the funds into an attorney trust account once Whyte and Ms. Range demanded refunds. Sacks failed to do so.

Clear and convincing evidence does not establish that Sacks violated MLRPC 1.15(e) in representing Anderson. The hearing judge did not find that Anderson or Roberts-Marshall, his fiancé, ever requested a refund, or otherwise initiated a fee dispute.

### MLRPC 1.16(d) (Terminating Representation)

MLRPC 1.16(d) stated:

> Upon termination of representation, a lawyer shall takes steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The hearing judge concluded that Sacks violated MLRPC 1.16(d) in representing Whyte, Chen, Anderson, Mr. Range, and Smith. We uphold these conclusions.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.16(d) in representing Whyte. Whyte retained Sacks to help her prepare for, and be present at, a meeting with an Assistant United States Attorney, and to be present

at any hearing or trial in a criminal case. Whyte paid Sacks $1,250. After a seven-minute meeting with the Assistant United States Attorney, Whyte requested a partial refund. Sacks refused, and terminated the representation. At that point, Sacks had not performed sufficient legal services to earn the $1,250 that Whyte had paid him, and was obligated to refund the portion of the $1,250 that he had not earned.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.16(d) in representing Chen. Chen retained Sacks to assist him in attempting to have the Federal Bureau of Investigation return certain personal property to him. Chen paid Sacks $2,500. The hearing judge did not find that Sacks provided any legal services to Chen. Within only three weeks of making the payment, Chen terminated Sacks's representation, and requested that Sacks refund the $2,500. Sacks refused to do so. At that point, Sacks was required to refund any portion of the $2,500 that he had not earned; or, if Sacks believed that he had earned the entirety of the $2,500, he was required to demonstrate this by providing Chen with an accounting of the $2,500.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.16(d) in representing Anderson. Anderson terminated Sacks's representation, and requested a copy of his file. Anderson needed a copy of his file immediately, as, at the time, he had approximately two weeks to appeal an order of removal in an immigration case. On numerous occasions, Roberts-Marshall, Anderson's fiancé, requested a copy of Anderson's file, as well as transcripts that she had given to Sacks. Sacks failed to respond. More than a month after Anderson had terminated Sacks's representation, Roberts-Marshall received copies of an amended petition for writ of error

coram nobis and a petition for postconviction relief that Sacks had filed on Anderson's behalf, without copies of exhibits that had been attached to them.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.16(d) in representing Mr. Range. In a telephone call, an e-mail, and a letter, Kadish, Mr. Range's new counsel, advised Sacks that he had been retained to replace Sacks as Mr. Range's counsel, and asked to make arrangements to pick up Mr. Range's file and the $6,250 that Ms. Range had paid Sacks to represent Mr. Range in the Circuit Court for Washington County. As Kadish pointed out, Sacks could not have earned any of the $6,250, as, at the time, there was no case number for Mr. Range's case in the circuit court. After being telephoned by Kadish, Sacks went to the detention center, met with Mr. Range, and wrote on a legal pad that Mr. Range wanted Sacks to continue to serve as his counsel. Mr. Range signed the document without reading it. Afterward, Ms. Range asked Sacks to return Mr. Range's file and the $6,250 that she had paid him to represent Mr. Range in the circuit court. Further, Mr. Range informed Sacks that his representation had been terminated, and that he was to provide Kadish with Mr. Range's file and the $6,250 that Ms. Range had paid him to represent Mr. Range in the circuit court. Sacks refused to comply.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 1.16(d) in representing Smith. Smith paid Sacks to represent him in various matters. Smith terminated Sacks's representation, and requested a refund of any unearned fees. Sacks failed to provide a refund, or an accounting of Smith's funds.

**MLRPC 3.1 (Meritorious Claims and Contentions)**

MLRPC 3.1 stated:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

The hearing judge concluded that Sacks violated MLRPC 3.1

as it relates to the Tindeco litigation as described in the Order dated September 4, 2013 in Case No. 24-C-11-008404; Motion in Limine and Memorandum filed September 30, 2013 in Case No. 24-C-11-008404 and associated Order entered October 16, 2013; and Memorandum Opinion Concerning Pending Motions dated October 24, 2016 in Case No. 24-C-14-006060 and associated Orders.
        As explained above, [the hearing judge] does not find that the litigation with Tindeco Wharf, LLC, Case No. 24-C-11-008407[,] violates [MLRPC] 3.1 since [the circuit court] found that [Sacks] did not bring the suit in bad faith.

The record reflects that no other part of the hearing judge's opinion mentions "Case No. 24-C-11-008404." Except for the last digit, this case number is identical to that of Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. In that action, consistent with the hearing judge's statements about "Case No. 24-C-11-008404," on September 30, 2013, the defendants filed a Motion in Limine and Memorandum in Support Thereof; and, on October 16, 2013, the circuit court issued an Order in which it granted multiple requests that the defendants made in the Motion in Limine and Memorandum in Support Thereof. It is evident that the hearing judge's references to "Case No. 24-C-11-008404" were the result of a typographical error, and were intended to be references to Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407.

That said, contrary to the hearing judge's statements about "Case No. 24-C-11-008404," the record does not appear to include an "Order dated September 4, 2013" in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. Unable to discern the basis thereof, we do not find clear and convincing evidence to support the hearing judge's conclusion that Sacks violated MLRPC 3.1 "as described in the Order dated September 4, 2013" in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407.

That leaves us to address the hearing judge's conclusions that Sacks violated MLRPC 3.1 "as described in": the September 30, 2013 Motion in Limine and Memorandum in Support Thereof, and the October 16, 2013 Order, in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407; and the October 24, 2016 Memorandum Opinion Concerning Pending Motions in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-14-006060. We also address the hearing judge's conclusion that Sacks did not violate MLRPC 3.1 by initiating Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. We uphold these conclusions.

To provide context, we briefly discuss the documents to which the hearing judge referred. On September 30, 2013, in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407, Tindeco and other defendants filed a Motion in Limine and Memorandum in Support Thereof, in which they requested that the circuit court preclude Sacks "from introducing any evidence [that was] related to the areas of discovery where he made less than a complete production during discovery." The defendants contended that "many of [] Sacks'[s] claims [we]re not relevant and/or based upon evidence [that was]

- 44 -

not produced during discovery." On October 16, 2013, in response to the Motion in Limine, the circuit court issued an Order, precluding Sacks "from making any reference to, and from seeking any testimony from others or presenting any evidence regarding," among other things: "any perpetual right to reside in [Tindeco]'s property"; "any purported evasion of service by [the d]efendants"; "any identity theft at [Tindeco]'s apartments"; "any unrelated lawsuits against [the d]efendants"; "any of the witnesses whose statements and related documents [Sacks] ha[d] not produced in response to [i]nterrogatories"; "any expert testimony or opinions from any expert witness [who was] not properly identified"; "any privileged communications"; and "any emotional distress, worry, sleeplessness, or other emotional-type damages [that Sacks] purportedly ha[d] suffered."

On October 24, 2016, in <u>Stephen H. Sacks v. Tindeco Wharf, LLC, et al.</u>, No. 24-C-14-006060, the circuit court issued a Memorandum Opinion Concerning Pending Motions in which it sanctioned Sacks by requiring him to pay attorneys' fees that resulted from his "filings that lack[ed] a substantial, good-faith basis." The circuit court also sanctioned Sacks by issuing a Screening Order, under which Tindeco and the other defendants would not be obligated to respond to Sacks's filings unless the circuit court approved them. The circuit court found, in pertinent part:

> The [defendant]s have clearly and convincingly demonstrated a basis for sanctions against [] Sacks. [] Sacks's communications to counsel . . . continue to be inappropriate, unnecessary, intemperate[,] and sometimes abusive. The more fundamental basis for sanctions, however, is [] Sacks's filing of [an] amended complaint, by which he purported to re-assert claims against [certain] defendants . . . after his claims against those [defendant]s had been dismissed with prejudice. This fits [] **Sacks's broader pattern of persisting in filings even after the Court has ruled on the issues**. [Sacks] has a right to perfect an appeal from this Court's actions at an appropriate

time. Seeking reconsideration of the Court's rulings, if there is some basis to believe [that] the Court has overlooked issues or authority, also is permissible. But [] Sacks proliferates his contentions in multiple actions and multiple, prolix filings in each action. The result is to extend the length of the litigation[,] while magnifying the expense to the [defendant]s [who are] defending against his claims. [] Sacks has made an abundant record of his personal animosity toward the [defendant]s and counsel in this action[,] and has repeatedly stated his improper intention to pursue these matters against those [defendant]s for as long as he is able to do so. **That is the epitome of bad faith[,] and is particularly disturbing when manifested by an attorney**. . . . The docket in this action amply and repeatedly demonstrates [] **Sacks's willingness to assert claims that have no merit**[,] and then to pursue those claims through **overly long papers that repeat his positions even after the Court has heard and decided the issues**. The Court finds that [] Sacks's papers unnecessarily complicate the issues[,] and have caused [the d]efendants to have to respond at length to issues far beyond what is necessary to advance any meritorious[,] or even colorable[,] arguments. The Court can and will sanction [] Sacks by requiring him to pay costs and attorneys' fees for specific actions [that are] required by **filings that lack a substantial, good-faith basis**.

(Emphasis added).

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 3.1 "as described in" the September 30, 2013 Motion in Limine and Memorandum in Support Thereof, and the October 16, 2013 Order, in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. The hearing judge evidently concluded that the sheer volume of matters as to which the circuit court precluded Sacks from offering evidence demonstrated that Sacks had "assert[ed] or controvert[ed] issue[s without] a basis for doing so that [wa]s not frivolous[.]" MLRPC 3.1. We agree.

Clear and convincing evidence also supports the hearing judge's conclusion that Sacks violated MLRPC 3.1 "as described in" the October 24, 2016 Memorandum Opinion Concerning Pending Motions in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-

C-14-006060. In that opinion, the circuit court expressly found that Sacks had "assert[ed] claims that ha[d] no merit"; had made "filings that lack[ed] a substantial, good-faith basis"; and had repeated his arguments as to issues on which the circuit court had already ruled. These actions constituted violations of MLRPC 3.1's prohibition on asserting frivolous issues.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Sacks violated MLRPC 3.1 by initiating <u>Stephen H. Sacks v. Tindeco Wharf, LLC, et al.</u>, No. 24-C-11-008407. As discussed above, we uphold the hearing judge's conclusion that Sacks violated MLRPC 3.1 through his conduct after he initiated the action. This does not mean, however, that Sacks violated MLRPC 3.1 by initiating the action in the first place. The circuit court found that Sacks had not initiated the action in bad faith or without substantial justification. By initiating the action, Sacks did not violate MLRPC 3.1's prohibition on initiating frivolous actions.

### MLRPC 3.4(c) and 3.4(d) (Fairness to Opposing Party and Counsel)

MLRPC 3.4 stated in pertinent part:

A lawyer shall not:

* * *

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party[.]

The hearing judge concluded that Sacks violated MLRPC 3.4(c) and 3.4(d) "during

- 47 -

the course of the Tindeco litigation as described in relation to violation of [MLRPC] 3.1." In other words, in analyzing MLRPC 3.4(c) and 3.4(d), the hearing judge incorporated her analysis as to MLRPC 3.1. To the extent that the hearing judge concluded that Sacks violated MLRPC 3.4(c) or 3.4(d) "as described in the Order dated September 4, 2013 in" Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407, we do not discern clear and convincing evidence to support this conclusion because the record does not appear to include such an Order. To the extent that the hearing judge concluded that Sacks violated MLRPC 3.4(c) and 3.4(d) "as described in" the September 30, 2013 Motion in Limine and Memorandum in Support Thereof, and the October 16, 2013 Order, in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407, and the October 24, 2016 Memorandum Opinion Concerning Pending Motions in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-14-006060, we uphold these conclusions. The hearing judge also concluded that Sacks did not violate MLRPC 3.4(c) or 3.4(d) by initiating Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. We uphold this conclusion.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 3.4(c) and 3.4(d) in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. In that action, Tindeco and other defendants requested that the circuit court preclude Sacks "from introducing any evidence [that was] related to the areas of discovery where he made less than a complete production during discovery." Subsequently, the circuit court issued an Order, precluding Sacks "from making any reference to, and from seeking any testimony from others or presenting any evidence

- 48 -

regarding," various matters. The hearing judge found that the circuit court's Order demonstrated that Sacks "knowingly disobey[ed]" the discovery rules, MLRPC 3.4(c), and that he "ma[d]e [] frivolous discovery request[s] or fail[ed] to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party[,]" MLRPC 3.4(d). Simply put, we agree.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 3.4(c) and 3.4(d) in Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-14-006060. In that action, the circuit court required Sacks to pay attorneys' fees that resulted from his filings without a substantial, good-faith basis. The circuit court also issued a Screening Order, under which parties would not be obligated to respond to Sacks's filings unless the circuit court approved them. These circumstances demonstrate that Sacks knowingly disobeyed the discovery rules in violation of MLRPC 3.4(c), and that he made frivolous discovery requests or failed to make reasonably diligent efforts to comply with discovery requests in violation of MLRPC 3.4(d).

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Sacks violated MLRPC 3.4(c) or 3.4(d) by initiating Stephen H. Sacks v. Tindeco Wharf, LLC, et al., No. 24-C-11-008407. As discussed above, we uphold the hearing judge's conclusion that Sacks violated MLRPC 3.4(c) and 3.4(d) through his conduct after he initiated the action. It does not automatically follow, however, that Sacks violated MLRPC 3.4(c) or 3.4(d) by initiating the action. The circuit court found that the action was not frivolous; accordingly, by initiating the action, Sacks did not "knowingly disobey an obligation under the rules of a tribunal[.]" MLRPC 3.4(c). Additionally, by

initiating the action, Sacks could not have violated MLRPC 3.4(d), which applies only to discovery requests, not the initiation of actions.

## MLRPC 8.1(b) (Disciplinary Matters)

"[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority[.]" MLRPC 8.1(b). The hearing judge concluded that Sacks violated MLRPC 8.1(b) during Bar Counsel's investigations of Harris's, Whyte's, Chen's, Anderson's, Kadish's, Smith's, and Spence's complaints against Sacks. Clear and convincing evidence supports the hearing judge's conclusions. Sacks provided: a response to Harris's complaint approximately nine months late; a response to Whyte's complaint approximately two months late; a response to Chen's complaint in which he failed to address several of the allegations; a response to Anderson's complaint approximately four months late; and a response to Spence's complaint in which he did not respond in any substantive manner. Notably, Sacks failed to comply with multiple requests from Bar Counsel for information and documents, including: an accounting of the $40,350 that Sacks had collected on Harris's behalf; a complete copy of Whyte's file and documents that that were related to the $1,250 that Whyte had paid Sacks; a copy of Chen's file, an accounting of the $2,500 that Chen had paid Sacks, copies of any related attorney trust account records, and an explanation as to why Sacks had failed to return Chen's post-dated checks; bank records that were related to the $14,500 that Roberts-Marshall, Anderson's fiancé, had paid Sacks; a complete accounting of the funds that Ms. Range and her family had paid Sacks to represent Mr. Range, and related bank records; and an accounting of Smith's funds.

**MLRPC 8.4(b) (Criminal Act)**

"It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects[.]" MLRPC 8.4(b). The hearing judge concluded that Sacks violated MLRPC 8.4(b) by trespassing on Tindeco's property. Clear and convincing evidence supports the hearing judge's conclusion. In State v. Stephen H. Sacks, No. 5B02290405 and State v. Stephen H. Sacks, No. 3B02275164, the State charged Sacks with trespass. Although the hearing judge did not specify these two cases' dispositions, the hearing judge found that Sacks repeatedly trespassed on Tindeco's property. A lawyer violates MLRPC 8.4(b) where "clear and convincing evidence" establishes that the lawyer committed a crime, even if the lawyer was not convicted of that crime. Attorney Grievance Comm'n v. Shockett, 450 Md. 161, 170, 147 A.3d 362, 368 (2016) (cleaned up).

**MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)**

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" MLRPC 8.4(c). The hearing judge concluded that Sacks violated MLRPC 8.4(c) by misappropriating Whyte's, Chen's, Roberts-Marshall's, Ms. Range's, and Smith's funds. The hearing judge also concluded that Sacks violated MLRPC 8.4(c) in connection with his representation of Harris, Anderson, Mr. Range, and himself. We uphold these conclusions.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 8.4(c) by misappropriating Whyte's, Chen's, Roberts-Marshall's, Ms. Range's, and Smith's funds. A lawyer violates MLRPC 8.4(c) by misappropriating

- 51 -

funds.  See Attorney Grievance Comm'n v. Sweitzer, 452 Md. 26, 42, 156 A.3d 134, 143 (2017), reconsideration denied (Apr. 21, 2017) ("[A]n attorney's intentional misappropriation of client funds violates MLRPC 8.4(c)."  (Cleaned up)).

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 8.4(c) in connection with his representation of Harris.  Sacks misrepresented to Harris and his family that the $26,350 that Sacks had collected in excess of the $14,000 fee was "for fees and expenses."  Additionally, in support of a motion to dismiss a breach of contract case that Bailey, Harris's mother, initiated against him, Sacks fabricated five retainer agreements that falsely purported to have been signed by Bailey.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 8.4(c) in connection with his representation of Anderson.  Sacks misrepresented to the Immigration Court that he had become involved with the immigration case on a date that was nearly two weeks after he had been retained.  Subsequently, Sacks misrepresented to the Immigration Court that he had filed a petition for postconviction relief.  The Immigration Court directed Sacks to file a copy of the petition for postconviction relief with the Immigration Court.  Sacks failed to do so, even after he subsequently filed a petition for postconviction relief in the circuit court.  Sacks's failure to file a copy of the petition for postconviction relief with the Immigration Court was an attempt to deceive the Immigration Court as to when he had filed the petition for postconviction relief.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 8.4(c) in connection with his representation of Mr. Range.  Kadish

informed Sacks that he had been retained to replace Sacks as Mr. Range's counsel. Afterward, Sacks went to the detention center, met with Mr. Range, and handwrote on a legal pad that Mr. Range wanted Sacks to continue to serve as his counsel. Sacks had Mr. Range sign the document in an attempt to circumvent his decision to terminate Sacks's representation, and to keep the $6,250 that Ms. Range had paid Sacks to represent Mr. Range in the Circuit Court for Washington County. After Kadish filed a complaint against Sacks with Bar Counsel, Sacks provided a response to Kadish's complaint in which he intentionally misrepresented the terms of his representation of Mr. Range. Sacks attached an altered retainer agreement to his response to Kadish's complaint.

Clear and convincing evidence supports the hearing judge's conclusion that Sacks violated MLRPC 8.4(c) in connection with his representation of himself. During the litigation that involved Tindeco, Sacks made numerous intentional misrepresentations to courts and opposing counsel.

**MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Attorney Grievance Comm'n v. Chanthunya, 446 Md. 576, 602, 133 A.3d 1034, 1049 (2016), reconsideration denied (Apr. 21, 2016) (cleaned up). The hearing judge concluded that Sacks violated MLRPC 8.4(d) by engaging in conduct that, "taken as a whole . . . most certainly brings the legal profession into disrepute[.]" Clear and convincing evidence

- 53 -

supports the hearing judge's conclusion. Sacks's misconduct—including, most significantly, misappropriating funds, fabricating documents, and making misrepresentations to courts, clients, and opposing counsel—would certainly negatively impact the perception of the legal profession of a reasonable member of the public.

## MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a). The hearing judge concluded that Sacks violated MLRPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion. As discussed above, Sacks violated MLRPC 1.2(a), 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 1.15(e), 1.16(d), 3.1, 3.4(c), 3.4(d), 8.1(b), 8.4(b), 8.4(c), and 8.4(d).

## (B) Sanction

Bar Counsel recommended that we disbar Sacks. At oral argument, Sacks requested that we either dismiss this attorney discipline proceeding, or in the alternative "[g]ive [him] 2,000 hours of going to a prison" to help others.

In Allenbaugh, 450 Md. at 277-78, 148 A.3d at 316-17, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.
>
> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple

- 54 -

violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

Here, Sacks violated MLRPC 1.2(a) by taking actions on Anderson's and Mr. Range's behalf after they had terminated his representation of them. Sacks violated MLRPC 1.3 by taking months to file documents, and failing to appear at a proceeding, on Anderson's behalf. Sacks violated MLRPC 1.4(a)(2) by failing to advise Anderson that the circuit court had denied a petition and that he had filed documents, by failing to communicate with Anderson for approximately nine months, and by failing to provide Ms. Range with copies of retainer agreements. Sacks violated MLRPC 1.4(a)(2) and 1.4(b) by

failing to communicate to Harris and his family that he was collecting a fee that was almost triple the one that had been agreed upon. Sacks violated MLRPC 1.4(a)(3) by failing to respond to Anderson's and Roberts-Marshall's requests for a copy of Anderson's file. Sacks violated MLRPC 1.5(a) by collecting a fee to represent Harris that was almost triple the agreed-upon fee, and by charging Anderson and Mr. Range fees for providing essentially no legal services. Sacks violated MLRPC 1.15(a), 1.15(c), and 1.15(d) by receiving funds for representing Whyte, Chen, Anderson, the Ranges, and Smith, and failing to deposit the funds into an attorney trust account, despite not having earned them. Sacks violated MLRPC 1.15(e) by failing to deposit funds into an attorney trust account once Whyte and Ms. Range demanded refunds. Sacks violated MLRPC 1.16(d) by failing to return unearned fees and/or provide accountings to Whyte, Chen, Ms. Range, and Smith, and by failing to provide copies of Anderson's and Mr. Range's files. Sacks violated MLRPC 3.1 by asserting frivolous issues in two cases. Sacks violated MLRPC 3.4(c) by knowingly disobeying the discovery rules in two cases. Sacks violated MLRPC 3.4(d) by making frivolous discovery requests, or failing to make reasonably diligent efforts to comply with discovery requests, in two cases. Sacks violated MLRPC 8.1(b) by providing responses to Harris's, Whyte's, Chen's, Anderson's, and Spence's complaints against him that either were late or failed to address several of the allegations, and by failing to provide documents and/or information that Bar Counsel requested as to his representation of Harris, Whyte, Chen, Anderson, Mr. Range, and Smith. Sacks violated MLRPC 8.4(b) by trespassing on Tindeco's property. Sacks violated 8.4(d) by engaging in misconduct that would negatively impact the perception of the legal profession of a reasonable member of

the public.

Most significantly, Sacks violated MLRPC 8.4(c) in thirteen instances. First, Sacks misrepresented to Harris and his family that the $26,350 that Sacks had collected in excess of the $14,000 fee was "for fees and expenses." Second, Sacks fabricated five retainer agreements that falsely purported to have been signed by Bailey, Harris's mother. Third, Sacks misrepresented to the Immigration Court that he had become involved with Anderson's immigration case on a date that was nearly two weeks after he had been retained. Fourth, Sacks misrepresented to the Immigration Court that he had filed a petition for postconviction relief before he had done so. Fifth, Sacks failed to file a copy of the petition for postconviction relief with the Immigration Court in an attempt to deceive the Immigration Court as to when he had filed the petition for postconviction relief. Sixth, Sacks had Mr. Range sign a document in an attempt to circumvent his decision to terminate Sacks's representation, and to keep the $6,250 that Ms. Range had paid Sacks to represent Mr. Range in the Circuit Court for Washington County. Seventh, Sacks intentionally misrepresented the terms of his representation of Mr. Range in, and attached an altered retainer agreement to, his response to Kadish's complaint against Sacks. Eighth, during the litigation that involved Tindeco, Sacks made numerous intentional misrepresentations to courts and opposing counsel. Ninth, tenth, eleventh, twelfth, and thirteenth, Sacks misappropriated Whyte's, Chen's, Roberts-Marshall's, Ms. Range's, and Smith's funds.

Sacks's misconduct harmed his clients, who, among other things, were deprived of their funds and files, were charged unreasonable fees, and were lied to by Sacks. Sacks's refusal to withdraw his appearance in an appeal forced Anderson to file, on his own behalf,

a motion to strike Sacks's appearance in the appeal. Sacks's failure to provide legal services resulted in the Immigration Court ordering Anderson removed. Sacks's initiation of eight frivolous actions or appeals, his assertion of frivolous issues, and his failure to obey the discovery rules harmed courts, parties, and opposing counsel.

The hearing judge did not expressly address whether there were any aggravating factors. Upon our review of the record, we note multiple aggravating factors. First, Sacks's repeated refusals to refund unearned fees to his clients—*i.e.*, what the hearing judge called "a common theme" that Sacks apparently "will go to any length to keep funds [that were] paid to him"—demonstrates that he engaged in a pattern of misconduct; that he is likely to repeat his misconduct; that he is indifferent to making restitution; and that he had a selfish motive. Next, Sacks committed multiple violations of the MLRPC. Also, Sacks has refused to acknowledge his misconduct's wrongful nature; at oral argument: he stated that he "did not do anything wrong in these matters"; he stated that "[t]here is nothing that Bar Counsel could prove that [he] did wrong in these cases"; and, after being asked whether he had violated any of the MLRPC, he responded: "If the facts came out, no." Additionally, one of Sacks's victims, Anderson, was an immigrant, and thus was vulnerable; a client's "status as an immigrant render[s] him [or her] particularly vulnerable to [a lawyer's] misconduct." Allenbaugh, 450 Md. at 280, 148 A.3d at 318 (citations omitted). Further, Sacks had substantial experience in the practice of law; as of the earliest instance of his misconduct, Sacks had been a member of the Bar of Maryland for approximately thirty-six years. Finally, Sacks engaged in illegal conduct; specifically, he committed crimes, including trespassing on Tindeco's property, and harassing and threatening witnesses and

lawyers.

The hearing judge noted only one mitigating factor: the absence of prior attorney discipline. Upon our review of the record, we do not discern any other mitigating factors.

The appropriate sanction for Sacks's misconduct is disbarment. Sacks engaged in copious instances of misconduct while representing seven clients, as well as himself. Sacks violated MLRPC 8.4(c) by, among other things, misappropriating funds, fabricating documents, and making misrepresentations to courts, clients, and opposing counsel. "Absent compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment." Attorney Grievance Comm'n v. Thomas, 445 Md. 379, 402, 127 A.3d 562, 576 (2015) (cleaned up). Additionally, "disbarment will inevitably follow any unmitigated misappropriation of . . . funds." Attorney Grievance Comm'n v. Kobin, 432 Md. 565, 585, 69 A.3d 1053, 1065 (2013) (cleaned up). Here, the only mitigating factor—the absence of prior attorney discipline—comes nowhere close to constituting a compelling extenuating circumstance. Additionally, there are several aggravating factors, including illegal conduct, a pattern of misconduct, and likelihood of repetition of the misconduct. Simply put, given the numerous instances and wide range of the misconduct, and the injury to multiple clients, disbarment was necessary to protect the public.

For the above reasons, on March 6, 2018, we disbarred Sacks and awarded costs against him.